**In re Wayne B. BERZON, Debtor.**

**Wayne B. BERZON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 91 B 05208. Adv. No. 91 A 00339.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 7, 1992.

Kevin D. Sprow, McKenzie & McKenzie, Chicago, Ill., for debtor.

David S. Newman, U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the court on the debtor's motion for summary judgment with respect to a complaint he filed to determine the dischargeability of certain tax debts the debtor owed the United States. The issue is whether the debtor's federal income tax liabilities for the years 1981 through 1984 are dischargeable in this Chapter 7 case under 11 U.S.C. § 523 and § 727. The IRS takes the position that the debtor's tax liability is excepted from a discharge under § 523(a)(1)(C) because debtor failed to file tax returns, understated his income, and deposited his paychecks into his girlfriend's bank account.

The pleadings and exhibits filed in connection with the instant summary judgment motion indicate the following: Wayne Berzon was a commodities trader with Rosenthal & Company from 1976 to 1984. From 1976 until 1980, Berzon filed his federal income tax returns on time. However, from 1981 to 1984, Berzon did not file any federal income tax returns because, he claims, he did not have the money to pay the taxes, and his life was in disarray.

Berzon was a drug and alcohol user. According to Berzon, he initially used drugs only on an experimental basis, but by 1982 extensive use of cocaine began to cause him serious problems. Berzon claims that his drug use contributed to his failure to file tax returns and also helped to destroy his family life.

In 1982 Berzon separated from his wife. They were divorced in 1984. About this time Berzon began living with Rosemary Sprenger. He deposited his paychecks into her bank account. According to Berzon, he did this to help pay for their joint household expenses. However, the IRS asserts that Berzon deposited his wages into Sprenger's account to evade seizure of his money by the IRS.

In 1986, Sprenger pressured Berzon to file his 1985 tax return. She then discovered that Berzon had not filed tax returns for the years 1981 through 1984. She brought him to her accountant, Lizbeth Pryde. Pryde prepared Berzon's delinquent tax returns with Berzon's help, and the returns were filed in 1986. The 1983 return reported $100,822 income with a $1,500 loss, and the 1984 return reported $23,899 income with a $3,000 loss.

On March 11, 1991 Berzon filed a Chapter 7 petition, his third bankruptcy filing since 1985. The earlier cases were dismissed. Thereafter, he filed a complaint to determine the dischargeability of his income tax debt, and filed a motion for summary judgment. The IRS filed a cross-motion for summary judgment asserting that the tax liability was nondischargeable because Berzon willfully attempted to evade his income tax liability.

The question has been fully briefed by both sides. A review of the various documents the parties have filed with this court leads to the conclusion that there are no issues of material fact in dispute between the IRS and the debtor. The outcome of the adversary proceeding turns on whether the debtor's intent at the time he failed to file his returns, why he understated his income in returns he did file, and what motivated him to deposit his paychecks into Ms. Sprenger's account. The burden is on the IRS to establish by a fair preponderance of the evidence that Berzon acted willfully to evade his tax obligation. After reviewing the submissions and arguments of the parties, this court finds that the record is clear, that the IRS has met its burden, that there are no issues of material fact, and that Berzon willfully attempted to evade payment of his income taxes. Therefore his obligation to the IRS for the years 1981–1984 are not dischargeable under 11 U.S.C. § 727. Accordingly, the IRS's motion for summary judgment is granted. The debtor's motion for summary judgment is denied.

### JURISDICTION AND PROCEDURE

The court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b) as a matter arising under §§ 523 and 727 of the Bankruptcy Code. The matter is before this court for determination under Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this court for hearing and determination. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and (I).

### STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) Fed.R.Civil P., Fed.R.Bkrtcy.Proc. 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The inquiry the court must make is whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. All rea-

sonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *In re Mirus*, 87 B.R. 960 (Bankr. N.D.Ill.1988).

### DISCUSSION

■ Section 523 of the Bankruptcy Code provides that certain tax debts are not dischargeable in a Chapter 7 case. The language in § 523 that is relevant to the instant dispute is:

> [a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for a tax ... with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax

.     .     .     .     .     .

11 U.S.C. § 523(a)(1)(C)

The case law suggests that the phrase "willfully attempted ... to evade or defeat ..." should be interpreted in accord with § 7201 of the Internal Revenue Code, providing that it is a felony to "willfully attempt in any manner to evade or defeat any tax imposed by [Title 26, i.e. the Internal Revenue Code] or the payment thereof." *In re Gathwright*, 102 B.R. 211 (Bkrtcy.D.Ore.1989). At the same time, however, it is clear that § 523 of the Bankruptcy Code and § 7201 of the Internal Revenue Code are not identical since § 7201 contains the additional phrase "or payment thereof;" the § 523 exception to discharge does not contain this language. However, this court believes that this difference in language is of no practical effect in terms of interpretation of the statute. *See, In re Jones*, 116 B.R. 810 (Bankr. D.Kan.1990). *But see, In re Gathwright*, 102 B.R. 211, 212 (Bankr.D.Or.1989) (the difference in statutory language means that it is irrelevant to the determination of dischargeability of taxes whether the debtor tried to evade payment or collection of the tax.) Thus, contrary to the holding in *Gathwright*, this court believes that is would be relevant to determine whether Berzon deposited his paychecks into Sprenger's bank account to contribute to the

payment of household expense bills or to avoid having the money seized by the IRS. However, as indicated below, it is not necessary to a resolution of the instant summary judgment motion to resolve that question.

■ The burden of proving that the debtor's tax liabilities are nondischargeable is on the IRS. *In re Fernandez*, 112 B.R. 888 (Bkrtcy.N.D.Ohio 1990); *In re Kirk*, 98 B.R. 51 (Bkrtcy.M.D.Fla.1989). The IRS must prove nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Thus, the IRS will meet its burden if it shows that it is more probable than not that Berzon willfully attempted to evade his taxes.

■ Whether Berzon willfully attempted to evade income tax is a question of fact to be determined from the totality of the record. *In re Kirk*, 98 B.R. 51 (Bkrtcy. M.D.Fla.1989). The IRS must show by a preponderance of the evidence that Berzon willfully attempted to evade his tax obligation by filing late returns and understating his income. Direct proof of a debtor's intent to evade tax obligations is usually unavailable. Thus, intent to evade taxes is generally provable by circumstantial evidence and reasonable inferences drawn from the existence of certain fact patterns, otherwise called badges of fraud. *In re Levinson*, No. 85 A 1432, slip op. at 7 (Bankr.N.D.Ill. April 18, 1990). *See also, Twyne's Case*, 3 Co.Rep. 80b, 76 Eng.Rep. 809 (1601). In the income tax area, badges of fraud include significant understatements of income made repeatedly; failure to file tax returns; repeatedly filing returns late; implausible or inconsistent behavior by the taxpayer; and failure to cooperate with federal tax authorities. *In re Graham*, 108 B.R. 498 (Bkrtcy.E.D.Pa. 1989); Tax Court Rule 142(b), IRC. § 6653(b).

As the IRS sees it, the debtor's conduct in connection with his 1981–84 income tax obligations fits into a number of the badges of fraud. First, Berzon filed his returns late, in 1986 when they were due in

1982, 1983, 1984, and 1985. Second, he significantly understated his income in several of the tax returns he did file. His 1983 tax return reports income of $100,822, but he testified at his deposition that his 1983 income was $210,000. As for 1984, his tax return reports $23,899 income, but his 1985 bankruptcy schedules and statement of affairs state that is 1984 income was $65,000. At his deposition, Berzon testified that whatever amount he reported as his income on his bankruptcy papers was the proper amount. Third, the IRS believes Berzon deposited his paycheck into Sprenger's bank account to hide the money from the IRS.

The debtor on the other hand, claims that he did not file tax returns on time because his cocaine habit was tearing his life apart, and because he did not have the money to pay the taxes anyway. As a threshold matter, the debtor argues that his drug habit was the major cause of his failure to file tax returns. As he sees it, his drug dependency was such that he cannot be found to have acted "willfully" in failing to file returns. The debtor's drug abuse does not preclude a finding that he acted willfully in failing to file tax returns. This court has previously ruled in *In re Correa*, 58 B.R. 88 (Bkrtcy.N.D.Ill.1986), that a debtor's habitual use of cocaine is voluntary and intentional. Therefore, the debtor's conduct in *Correa* in failing to attend creditors' meetings, failing to disclose foreclosure proceedings, and failing to produce financial information constituted "willful failure of the debtor to abide by orders of the court" within the meaning of 11 U.S.C. § 109(g)(1) and precluded the debtor from refiling a bankruptcy petition, even if the debtor's failures were attributable to his cocaine addiction. The court's reasoning in *Correa* necessarily leads to the conclusion that Berzon's cocaine use was voluntary and intentional for purposes of the Bankruptcy Code. Therefore, he cannot use his drug difficulties to avoid having his failure to file tax returns from 1981–1984 deemed willful.

This court must determine whether the debtor's overall activity with respect to the income taxes he owed the IRS for each of the years in question amounted to a willful attempt to evade or defeat the payment of the taxes. Willful is defined as "intentional, deliberate, voluntary." Blacks Law Dictionary, 6th ed. 1990. *See also, Cheek v. U.S.*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). As previously indicated, in determining whether the debtor acted willfully in trying to evade or defeat the payment of his taxes the court will look for certain fact patterns, badges of fraud, that lead logically to the conclusion that his actions were willful and part of a scheme to that end. *See, e.g., In re Fernandez*, 112 B.R. 888 (Bkrtcy.N.D.Ohio 1990) (debtor willfully attempted to evade taxes when the debtor filed his tax returns late, did not make voluntary payments on his tax liabilities, and submitted a W–4 tax form to reduce the amount withheld from his wages to an amount that was substantially less than he owed the government for taxes); *In re Carapella*, 105 B.R. 86 (Bkrtcy. M.D.Fla.1989) (debtor willfully attempted to evade income tax when the debtor understated his income by $275,000, did not keep records of his income, and was convicted of mail fraud in connection with his income generating scheme).

In the present situation, the IRS has established several badges of fraud that lead to the conclusion that Berzon willfully attempted to evade his taxes. First, Berzon knew he was required to file tax returns because he had filed returns in previous years. By the same token, the debtor's claim that he did not file the returns because he had no money to pay the taxes in question is irrelevant. He clearly could have filed the returns when due without paying those taxes. 11 U.S.C. § 523(a)(1)(B)(i); *In re Jones*, 116 B.R. 810 (Bankr.D.Kan.1990). Although filing a return without payment would have exposed him to interest and penalties, IRC § 6653(a), that is exactly what he should have done. Had he done that, his tax obligations for the years in question would have been dischargeable (assuming he also accurately stated his income in those returns, and the IRS was unable to show the deposits of his paychecks into Sprenger's

account were not made in good faith). It would be impossible for the IRS to say the debtor was willfully trying to evade taxes if he fully and accurately revealed to the IRS on a timely basis the fact that he owed those taxes but failed to pay them. Second, the deposition of the accountant, Pryde, confirms that Berzon knew he had to file tax returns. Third, he filed his returns from two to five years late. Fourth, he understated his income for two of the years on the return he did file.

■ It is true that in virtually all the cases the IRS cites for support the debtor did more than file late tax returns and understate income.[1] However, those cases were decided under the clear and convincing evidence standard which many courts thought to be the degree of proof a creditor had to produce to have a debt found to be nondischargeable. In general, those cases held that late filings and understatement of income provided evidence of a willful attempt to evade taxes, but were not sufficient without more evidence of the debtor's state of mind to satisfy the clear and convincing standard. *See, e.g., In re Graham*, 108 B.R. 498 (Bkrtcy.E.D.Pa. 1989) (debtor's understatement of income for four years was insufficient evidence to prove willful attempt to evade taxes where the government did not allege: inadequate bookkeeping, inadequate retention of records, inconsistent behavior or overstatement of deductions); *In re Gilder*, 122 B.R. 593 (Bkrtcy.M.D.Fla.1990) (tax liability was nondischargeable where debtor submitted false W–4 forms to reduce his taxes, admitted he wanted to avoid the tax, and filed his returns only after the IRS visited him at home); *In re Carapella*, 105 B.R. 86 (Bkrtcy.M.D.Fla.1989) (debtor willfully attempted to evade taxes when he understat-

ed his income by $275,000, had created shell corporations to conduct a mail fraud scheme and hide money, and gave the IRS an accurate income figure only after hearing about the government's offer of leniency); *Grosshandler v. Commissioner*, 75 T.C. 1 (1980) (taxpayer willfully attempted to avoid taxes under IRC § 6653(b)[2] when he knew he had a responsibility to file, made false and inconsistent statements to IRS agents, did not cooperate with the IRS investigation, failed to keep accurate and complete records of his income, and failed to file income tax returns); *Edelson v. Commissioner*, 829 F.2d 828 (9th Cir.1987) (taxpayer fraudulently understated his income when he was well-educated, kept inadequate records, did not file income tax returns for three years, transferred assets before filing his first invalid return, and failed to cooperate with the IRS agents).

■ All these cases predate the Supreme Court's recent decision in *Grogan v. Garner*, supra, at 250. The evidentiary standard now applicable to § 523 nondischargeability determinations is the preponderance of the evidence test. Under that standard, a finding of a combination of unexcused late filings and significant income misrepresentation are alone sufficient to show a willful attempt to evade payment for purposes of § 523(a)(1)(C). By producing undisputed admissible evidence that Berzon had filed taxes for the previous years, that he had told his accountant that he knew he was required to file income tax returns, that he eventually filed his returns several years late, and that in those returns he admitted that he understated his income by more than 50% for two of the years in question, the IRS has proved, by a preponderance of the evidence, that Berzon willfully attempted to evade his tax obli-

---

1. The debtor cites no cases in support of his position which warrant further discussion. The debtor relies on *Gathwright* in support of his argument, but the court has previously stated that it disagrees with that court's analysis. *See,* supra at 250. The debtor also cites *Fernandez,* which this court has discussed. *See,* supra at 251.

2. IRC § 6653(b) provides:
   Failure to pay tax
   (b) Fraud.—If any part of any underpayment ... of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).

gation.[3]

The burden of proving the debts were nondischargeable always remains with the government. However, once the United States produced sufficient uncontested evidence that the debtor, in failing to file tax returns, knew he was obligated to file, and that he admitted he had understated his income for the years in question in two of the returns he subsequently filed late, the burden of going forward shifted to the debtor to produce evidence showing that material facts are in dispute as to why he failed to file the return in question.

As previously held, the debtor's defense that he did not act willfully because of his substance abuse has already been rejected as a matter of law. *See, Correa,* supra p. 251. By the same token the court has also given no weight to the fact that the debtor lacked the resources to pay the taxes he owed as an excuse for failing to file timely tax returns again as a matter of law, supra p. 251. Finally, the debtor has completely failed to explain why he understated his income in two of the late returns he filed. Therefore, the debtor has failed to overcome the IRS's evidence that is sufficient to prove by a fair preponderance that the debtor failed to file tax returns in each of the years in question in order to further his scheme to try to evade his income taxes for each of those years.

## CONCLUSION

The debtor's failure to timely file tax returns for 1981, 1982, 1983, and 1984, returns he knew were due, when viewed in light of his understatement of income for 198— and 198— in the returns he did file,

lead inevitably to the conclusion that his actions were part of an overall scheme to willfully evade his tax obligations for each of those years. There are no issues of material fact with regard to either the existence of the scheme or the debtor's willful intent to pursue that scheme. Accordingly, the debtor's motion for summary judgment is denied. The crossmotion of the United States for summary judgment is granted. The debtor's obligations for income taxes due the United States for the years 1981, 1982, 1983 and 1984 are found to be nondischargeable.

---

**3.** The fact that he deposited his paycheck in Ms. Sprenger's account arguably is further evidence of the fact that he was engaged in a scheme to evade the payment of the taxes in question. However, in order to determine what the debtor's motivation was in depositing his paychecks in Sprenger's account, the court would have to make a determination that the testimony of the debtor and Sprenger that the checks were deposited in Ms. Sprenger's account to pay for this share of their joint household expenses is not credible. Credibility determinations are appropriate for resolution by the court after listening to the testimony of the parties. It is not appropriate to make credibility determinations in a

summary judgment motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is an issue of material fact with respect to the reason why the debtor deposited his paycheck in Ms. Sprenger's account. The court will therefore give no weight to the depositing of paychecks in resolving either the motion or crossmotion for summary judgment. The question will be whether other uncontested facts are indicative of a willful attempt to evade taxes as a matter of fact and as a matter of law without regard to the reasons why the debtor deposited his paychecks in Ms. Sprenger's account.